(No. 24116.—

THE CITY OF ROCKFORD, Appellee, *vs.* CLEMENT HEY *et al.*
Appellants.

*Opinion filed June 16, 1937.*

J. J. LUDENS, for· appellants.

CHARLES S. THOMAS, Corporation Counsel, and ALF O. AHLSTRAND, City Attorney, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

By this appeal Clement, Henry M., and Abram Hey, doing business under the firm name and style of Hey Brothers, seek a reversal of a judgment of the circuit court of Winnebago county fining them $100, and costs, for selling and offering for sale, in Rockford, products manufactured in their ice cream factories in Dixon and Sterling without a license, in violation of "An ordinance to amend an ordinance creating Board of Health and Health Department and providing health, sanitary, hygiene and quarantine regulations in the city of Rockford," effective

June 1, 1935. The trial judge has certified that the validity of the ordinance is involved and that public interest requires a direct appeal to this court.

Section 248 of the ordinance in controversy defines an ice cream factory as any building, room, enclosure, premises, place or establishment used for the purpose of manufacturing, making or mixing ice cream, water ices, frozen puddings, or any other product made in part from milk and cream, and frozen. Section 249 declares it shall be unlawful for any person, firm or corporation (1) to conduct, operate, manage or carry on an ice cream factory in the city of Rockford, or (2) to sell or offer for sale in Rockford any product manufactured by an ice cream factory, as defined in the preceding section, without first having registered, with the commissioner of health of the city, the State license issued by the Department of Agriculture, and obtaining a certificate of registration upon the payment of an annual inspection fee of $50 to the city clerk. By section 249A it is provided that if manufactured ice cream or ice cream products are sold at retail upon the premises where manufactured the fee shall be $25. Section 250 provides that any person desirous of (1) conducting, operating, managing or carrying on an ice cream factory in Rockford, or (2) selling or offering for sale in that city any products manufactured in an ice cream factory, shall first obtain a State ice cream factory license which he shall present to the commissioner of health, together with a written application for its registration setting forth, among other things, the location and description of the premises where such business is to be conducted. This section further provides that the commissioner shall make, or cause to be made, an investigation of the premises described in the accompanying application for the purpose of determining its fitness and suitability for the conduct of such business from a sanitary standpoint, and whether the applicant has complied with the city ordinances regulating health

and sanitation so as to properly safeguard and insure the purity of the product to be made or manufactured in such establishment; that if the commissioner shall be satisfied that the establishment has been properly licensed and that all city ordinances relative to such establishment have been complied with, he shall recommend to the city clerk that on the payment of $50 a certificate of registration issue. Section 250A specifically provides that section 250 shall apply to persons who conduct a retail ice cream business in Rockford. Section 251 provides that every person (1) who conducts an ice cream factory in Rockford, or (2) who sells ice cream in that city, shall comply with sanitary requirements which are described in detail. The succeeding section prescribes provisions with reference to light, ventilation and floors of ice cream factories hereafter established in Rockford, or factories operated or managed by persons who desire to sell or offer for sale in Rockford any product manufactured therein. Section 253 provides that any person, firm or corporation conducting, operating, managing or maintaining an ice cream factory contrary to the provisions of the amendatory ordinance shall be fined not less than five nor more than two hundred dollars for each offense, that every day a violation continues shall constitute a separate and distinct offense, and, further, that the mayor may revoke the certificate of registration for violation of any provisions of the ordinance, and that such revocation shall be in addition to the fine imposed. The penalty section, it is conceded, does not exclude persons conducting ice cream factories in other cities by restricting its application to persons conducting an ice cream factory in Rockford.

The stipulated facts upon which the judgment rests are: Defendants operate ice cream factories in the cities of Dixon and Sterling. Although they do not have an ice cream factory or make ice cream in Rockford, they do sell and offer for sale at wholesale to merchants in that city

ice cream manufactured in the factories in the two cities first named. This ice cream is sold to numerous small retail stores in Rockford and by them sold to the consumer. The defendants also sell ice cream at wholesale to merchants, retailers and dealers in other cities and villages throughout the northwestern part of Illinois within a radius of from fifty to one hundred miles of their places of business. They have a license from the State (the license specified in section 249) to operate an ice cream factory which provides for an inspection of their factories by State officers. None of the defendants, however, registered this license with the commissioner of health of Rockford. Nor did they pay the prescribed fee.

Defendants make the contention, among others, that the ordinance infringes the due process clauses of the State and Federal constitutions, by requiring an inspection of ice cream factories beyond the corporate limits of Rockford by municipal officers of that city. Plaintiff maintains, on the other hand, that the ordinance bears a real and substantial relation to the preservation of the public health and that, in consequence, it is a valid exercise of the police power to promote the health of its inhabitants. In particular, plaintiff argues that it was impliedly authorized to protect the health of its citizens from the spread of disease by empowering inspectors of its health department to go beyond the corporate limits to inspect ice cream factories, and the products made by freezing milk and cream.

Municipal corporations are of statutory creation and have no inherent powers. In Illinois, a city organized under the Cities and Villages act has such powers, only, as are therein expressly delegated by the General Assembly or necessarily implied to render the grant of specific powers effective. (*Elsenau* v. *City of Chicago,* 334 Ill. 78; *Barnard & Miller* v. *City of Chicago,* 316 id. 519; *City of Rockford* v. *Nolan,* id. 60; *City of Sullivan* v. *Cloe,* 277

Ill. 56.) Legislative powers of municipal corporations are strictly construed, and any rational doubt as to the existence of power must be resolved against the municipality. (*Lowenthal* v. *City of Chicago,* 313 Ill. 190; *Aberdeen-Franklin Coal Co.* v. *City of Chicago,* 315 id. 99; *People* v. *City of Chicago,* 261 id. 16.) Authority for the passage of a regulatory ordinance need not necessarily, however, be derived from a single enumerated power but may rest upon several sections or clauses of a statute. (*City of Rockford* v. *Nolan, supra.*) A review of the pertinent provisions of the applicable statute becomes necessary to determine, first, whether the ordinance assailed has a statutory basis.

Article 5 of the Cities and Villages act, (Smith-Hurd Stat. 1935, par. 65, p. 363,) enumerates the powers granted to city councils in cities and the presidents and boards of trustees in villages. Sub-section 4 empowers the city council in cities to fix the amount, terms and manner of issuing and revoking licenses. Sub-section 50 authorizes the council "To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables, and all other provisions, and to provide for place and manner of selling the same and to control the location thereof." By sub-section 53 power is given "To provide for and regulate the inspection of meats, poultry, fish, butter, cheese, lard, vegetables, cotton, tobacco, flour, meal and other provisions." Sub-section 66 limits the exercise of the police power by municipalities to the making of the powers expressly granted effective. Sub-section 78 grants power "To do all acts, make all regulations, which may be necessary or expedient for the promotion of health or the suppression of disease." By sub-section 91 the council may "tax, license and regulate * * * ice cream parlors," etc. Sub-section 102 gives the power to pass ordinances and make rules and regulations to carry into effect the powers granted to cities and villages, with such fines or penalties as the city council or board of trus-

tees shall deem proper, provided, no fine or penalty shall exceed $200 and no imprisonment shall exceed six months for one offense. An established canon of construction is that when words of general description follow particular and specific words, the former include things of the same class or nature as those specifically enumerated. (2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 422; *Arms* v. *City of Chicago,* 314 Ill. 316; *City of Clinton* v. *Wilson,* 257 id. 580; *Union Traction Co.* v. *City of Chicago,* 199 id. 484.) The term "other provisions" employed in subsections 50 and 53 is sufficiently comprehensive to include ice cream, a product of the same kind and character as those specifically mentioned. (*City of Chicago* v. *Arbuckle Bros.* 344 Ill. 597; *Crackerjack Co.* v. *City of Chicago,* 330 id. 320; *Koy* v. *City of Chicago,* 263 id. 122; *City of Chicago* v. *Drogasawacz,* 256 id. 34.) Since the power of a municipality to regulate includes the power to license, (*City of Chicago* v. *Arbuckle Bros. supra,*) it follows that the plaintiff was vested with power not only to regulate the manufacture and sale of ice cream but also to impose an inspection or license fee for the purpose of such regulation. The question of the extent of this power requires consideration.

Analysis of the provisions of the ordinance discloses prohibitions directed against (1) conducting an ice cream factory in Rockford, and (2) the sale in that city of ice cream products manufactured by a factory located in Rockford, or elsewhere, unless the factories or vendors register and pay a license fee to plaintiff. To entitle the vendor to the license not only must his State registration certificate be exhibited and the prescribed license fee paid, but an officer of the city of Rockford, according to section 250, must inspect the factory where this food product is prepared and manufactured. The ordinance not only requires inspections of local plants where ice cream products are made but purports to regulate plants in other communities,

States and countries. Applied to this case defendants could obtain a license only if an inspector from Rockford investigated their factories in Sterling and Dixon, already approved by an inspector of the State. Nor does the ordinance restrict the number of proposed inspections. So far as its provisions indicate, the inspectors might inspect them annually, monthly, or even daily. In short, the issue is whether plaintiff, the city of Rockford, may require ice cream factories, located in other cities, to meet sanitary requirements prescribed by the former city in order to entitle them to Rockford licenses upon payment of the annual fee for inspections of their plants.

Municipalities have no extra-territorial jurisdiction except in so far as it is expressly or impliedly delegated by statute. (55 A. L. R. 1183; *City of Chicago* v. *Brent*, 356 Ill. 40; *Strauss* v. *Town of Pontiac*, 40 id. 301.) An inherent or implied limitation upon the city in the exercise of the powers delegated to it by the legislature is that such powers shall be exercised within the corporate boundaries of the municipalities. Ordinances cannot have extra-territorial effect unless power is plainly conferred upon the corporation. Municipal ordinances are, therefore, necessarily local in their application, operating usually only in the territory of the municipality by which they are enacted and without force beyond it. (2 McQuillin on Mun. Corp. (2d ed.) sec. 693.) It is, of course, competent for the legislature to confer power to pass ordinances operative beyond the corporate boundaries for the purpose of suppressing and preventing nuisances, which affect the inhabitants of the corporation. (2 id. sec. 693; *Chicago Packing and Provision Co.* v. *City of Chicago*, 88 Ill. 221.) Paragraph 83 of section 1 of article 5 of the Cities and Villages act expressly confers power upon municipal corporations in this State to prohibit any offensive or unwholesome business or establishment within, or within one mile of, the corporate limits. No other provision of section 1 of arti-

cle 5 purports to grant power to cities to enact ordinances effective outside their boundaries. The legislature has not delegated power to municipal corporations to pass a regulatory and license ordinance which assumes to regulate ice cream factories outside their corporate limits. The provisions which plaintiff admits extend to ice cream factories in other cities are so inseparably connected with other provisions applicable locally as to render the entire enactment void.

The remaining contention which requires consideration is that section 250 constitutes an arbitrary and illegal delegation of legislative power. Section 250, as previously noted, requires that an applicant desiring to sell ice cream in Rockford shall present his State license, together with a written application, whereupon the commissioner of health shall make an investigation of the premises to ascertain whether they comply with the city ordinances regarding health and sanitation, and if *satisfied* with the condition of the premises, and that the establishment is properly conducted, he shall recommend that a license be granted. Although a legislative body may delegate to others the power to do those things which it might properly but cannot understandingly or advantageously do itself, it cannot delegate its own inherent function of determining what the law shall be. (*Lydy* v. *City of Chicago,* 356 Ill. 230; *Welton* v. *Hamilton,* 344 id. 82; *Sheldon* v. *Hoyne,* 261 id. 222.) A statute or ordinance which vests in administrative officers a discretion not only as to the administration of the enactment but also the determination of what the law is, or to apply it to one and refuse its application to another in like circumstances, constitutes an' unwarranted delegation of legislative authority. (*Malloy* v. *City of Chicago,* 365 Ill. 604.) Under the challenged ordinance an ice cream factory may meet every requirement of the ordinance and yet fail to satisfy the commissioner of health. From the facts and circumstances disclosed by the record

the conclusion is inescapable that enforcement of the ordinance is dependent upon the whim or caprice of the commissioner. The ordinance is invalid because it is incomplete and delegates to the commissioner of health an arbitrary discretion as to what the law shall be and to determine to whom the law shall apply.

The judgment is based upon a void ordinance. It must, therefore, be reversed.                                  *Judgment reversed.*